**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. |
| UNITED STATES OF AMERICA and SINAI HEALTH SYSTEM, an Illinois not-for-profit corporation, doing business as, MOUNT SINAI HOSPITAL, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

NOW COME, the Plaintiffs, AMADA ORTEGA (hereinafter "AMADA") and

MARCOS ARMAS (hereinafter "MARCOS"), both individually and on behalf of JENNIFER

ARMAS ORTEGA, deceased, (hereinafter "JENNIFER") by and through their attorneys,

Anthony J. Peraica & Associates, Ltd., complain against the Defendants, SINAI HEALTH

SYSTEM, doing business as MOUNT SINAI HOSPITAL (hereinafter "MOUNT SINAI"),

LEMUEL J. SHAFFER, MD (hereinafter "SHAFFER"), ACCESS COMMUNITY HEALTH

NETWORK (hereinafter "ACCESS"), and BARBARA DORAN, APRN, CNM (hereinafter

"DORAN")—however, by operation of 42 U.S.C. § 233, the UNITED STATES OF AMERICA

is substituted as a single Defendant in place of  SHAFFER, ACCESS, and DORAN, and state the

following:

1

## NATURE OF CLAIMS

1. AMADA and MARCOS bring this action against the UNITED STATES OF AMERICA seeking remedy for the wrongful death of their daughter JENNIFER. AMADA and MARCOS seek relief, including but not limited to compensatory damages and attorneys' fees, pursuant to 28 U.S.C. § 1346(b)(1) (Federal Tort Claims Act) and applicable State of Illinois law.

2. AMADA and MARCOS similarly bring this action against MOUNT SINAI seeking remedy for the wrongful death of their daughter JENNIFER. AMADA and MARCOS seek relief, including but not limited to compensatory damages and attorneys' fees pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) and applicable State of Illinois law, because MOUNT SINAI is not subject to the Federal Tort Claims Act yet the claims against MOUNT SINAI are so related to claims in the action against the UNITED STATES OF AMERICA that they form part of the same case or controversy under Article III of the United States Constitution.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1346(b)(1) and 1367.

4. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because all Defendants are located within this District and the events giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff, AMADA ORTEGA is a resident of Cook County, Illinois and the mother of JENNIFER ARMAS ORTEGA, deceased.

6. Plaintiff, MARCOS ARMAS is a resident of Cook County, Illinois and the father of JENNIFER ARMAS ORTEGA, deceased.

7. Defendant, SINAI HEALTH SYSTEM, is an Illinois not-for-profit corporation, and is doing business as and operating, MOUNT SINAI HOSPITAL, a hospital situated in Cook County, Illinois.

8. Defendant UNITED STATES OF AMERICA, by operation of 42 U.S.C. § 233, has become a single Defendant in place of:

   a. LEMUEL J. SHAFFER, MD, is an employee and/or agent of SINAI HEALTH SYSTEM, doing business as, MOUNT SINAI HOSPITAL, and is a physician licensed in the State of Illinois to practice medicine.

   b. ACCESS COMMUNITY HEALTH NETWORK, is an Illinois not-for-profit corporation and provider of community healthcare in Cook County, Illinois.

   c. BARBARA DORAN, APRN, CNM, is an employee and/or agent of ACCESS COMMUNITY HEALTH NETWORK, and an advanced practice registered nurse and a certified nurse midwife.

9. ACCESS is a private entity that receives grant money from the Public Health Service pursuant to 42 U.S.C. § 233.

10. SHAFFER was acting within the scope of his employment at ACCESS at all times relevant hereto.

11. DORAN was acting with the scope of her employment at ACCESS at all times relevant hereto.

## FACTS COMMON TO ALL COUNTS

12. That on August 7, 2013, and at all times relevant hereto, Defendant MOUNT SINAI owned, operated, managed, maintained, and controlled a hospital facility, wherein it was engaged in the business of offering hospital care and services in the City of Chicago, Cook County, State

of Illinois and engaged on its staff various physicians, nurses, employees and other personnel, including but not limited to, SHAFFER.

13. That on August 7, 2013, and at all times relevant hereto, ACCESS owned, operated, managed, maintained, and controlled a community healthcare facilities, wherein it was engaged in the business of offering medical care and services in the City of Chicago, Cook County, State of Illinois and engaged on its staff various physicians, nurses, employees, and other personnel, including but not limited to, DORAN.

14. That on August 7, 2013, and at all times relevant hereto, MOUNT SINAI accepted AMADA as a patient in its facility and held itself out to have and possess the requisite skills, know-how, facilities, personnel, equipment, and information to properly care for and treat AMADA in connection with the birth of her daughter JENNIFER.

15. That on August 7, 2013, and at all times relevant hereto, AMADA entrusted herself entirely to the care of MOUNT SINAI, and its various physicians and staff, including but not limited to SHAFFER.

16. That on August 7, 2013, and at all times relevant hereto, AMADA entrusted herself entirely to the care of ACCESS, and its various advanced practice registered nurses and certified midwives, including but not limited to DORAN.

17. That at all times material herein, AMADA was in the exercise of caution for her own safety as well as for the unborn child she was carrying in her womb, JENNIFER.

18. That on August 7, 2013, and at all times relevant hereto, MOUNT SINAI and ACCESS, by and through their duly authorized agents, apparent agents, servants, employees and physicians, including but not limited to, SHAFFER and DORAN, did care for and did attend to and treat AMADA in connection with the birth of her daughter JENNIFER.

19. That on August 7, 2013, and at all times relevant hereto, SHAFFER was a physician duly licensed in the practice of medicine in Cook County, Illinois.

20. That on August 7, 2013, and at all times relevant hereto, DORAN was a duly licensed advanced practice registered nurse and a certified nurse midwife in Cook County, Illinois.

21. That on August 7, 2013, and at all times relevant hereto, SHAFFER was an agent and/or employee of MOUNT SINAI, and as such practiced medicine in the facilities of MOUNT SINAI.

22. That on August 7, 2013, and at all times relevant hereto, DORAN was an agent and/or employee of ACCESS and MOUNT SINAI when she practiced medicine at the facilities of MOUNT SINAI.

23. That it was the duty of MOUNT SINAI, by and through its duly authorized agents, apparent agents, servants, employees and physicians, including but not limited to SHAFFER and DORAN, to render medical services consistent with the requisite standard of medical care and according to the medical requirements of the patients therein, so as not to cause injury to said patients, including AMADA and her daughter JENNIFER.

24. That it was the duty of ACCESS, by and through its duly authorized agents, apparent agents, servants, employees and physicians, including but not limited to DORAN, to render medical services consistent with the requisite standard of medical care and according to the medical requirements of the patients therein, so as not to cause injury to said patients, including AMADA and her daughter JENNIFER.

25. That on August 7, 2013 at approximately 3:33AM, AMADA presented to MOUNT SINAI with complaints of experiencing contractions and was taken to the OB Triage / Labor Delivery unit.

26. That on August 7, 2013, at approximately 3:33AM, AMADA was admitted to MOUNT SINAI and was in active labor with contractions occurring about every five minutes.

27. That on August 7, 2013, at approximately 8:10AM, vaginal examination revealed that AMADA's labor was progressing; with contractions occurring more frequently at two to three minute intervals and Pitocin was administered to augment the labor process.

28. That on August 7, 2013, at approximately 11:56AM, a subsequent vaginal examination revealed that there had been no further progression of AMADA's labor.

29. That on August 7, 2013, at approximately 11:56AM, as a result of the aforementioned stalled labor progression, SHAFFER and DORAN discussed this development and decided to artificially rupture AMADA's amniotic sac with the expectation that doing so would assist with the progression of AMADA's labor.

30. That on August 7, 2013, at approximately 12:39PM, AMADA's contractions slowed to only sporadic frequency.

31. That on August 7, 2013, at approximately 12:39PM, AMADA's amniotic sac was finally ruptured artificially, releasing copious amounts of clear fluid, and the administration of Pitocin was resumed.

32. That on August 7, 2013, at approximately 12:39PM, SHAFFER and DORAN were aware of AMADA's condition and anticipated that AMADA's labor would now progress to the second stage.

33. That on August 7, 2013, prior to 1:42PM, nurses and/or other employees and/or agents of MOUNT SINAI and/or ACCESS were alerted that JENNIFER's heart rate was experiencing non-reassuring persistent decelerations as revealed by fetal heart monitoring strips.

34. That on August 7, 2013, prior to 1:42PM, SHAFFER and DORAN knew that JENNIFER's heart rate was experiencing non-reassuring persistent decelerations as revealed by fetal heart monitoring strips.

35. That on August 7, 2013, at approximately 1:42PM, SHAFFER and DORAN finally noted in AMADA's medical records that JENNIFER's heart rate was experiencing non-reassuring persistent decelerations as revealed by fetal heart monitoring strips.

36. That on August 7, 2013, at approximately 1:42PM, SHAFFER and DORAN noted that a subsequent vaginal examination of AMADA revealed only a slight further progression of AMADA's labor.

37. That on August 7, 2013, at approximately 1:42PM, SHAFFER and DORAN decided to get consent from AMADA for operative delivery, and did obtain consent from AMADA.

38. That on August 7, 2013, at approximately 2:59PM—after already having received consent from AMADA for an operative delivery, and noting that AMADA's labor was still stalled with no progression of cervix dilation, effacement, or descent of JENNIFER's head— SHAFFER and DORAN finally had AMADA transferred to an operating room so that JENNIFER could be delivered by primary cesarean section.

39. That on August 7, 2013, at approximately 2:59PM, DORAN transferred complete care for AMADA and her unborn child to SHAFFER.

40. That on August 7, 2013, at approximately 3:00PM, SHAFFER, finally commenced AMADA's delivery of JENNIFER via primary, low-transverse caesarian section.

41. That on August 7, 2013, sometime after 3:00PM, SHAFFER, assisted by other duly authorized agents, apparent agents, servants, employees and physicians of MOUNT SINAI,

delivered baby JENNIFER from her mother AMADA at facilities owned, operated, managed, maintained, and controlled by MOUNT SINAI.

42. That during the aforementioned caesarian section procedure led by SHAFFER, it was noted that JENNIFER's head was larger than expected and a fetal scalp vacuum was used by SHAFFER and/or other duly authorized agents, apparent agents, servants, employees and physicians of MOUNT SINAI to assist in the delivery of JENNIFER.

43. That during the aforementioned caesarian section procedure led by SHAFFER, it was noted that JENNIFER's umbilical cord was wrapped once around her neck.

44. That on August 7, 2013, SHAFFER unduly delayed delivering JENNIFER by caesarean section after observing the non-reassuring persistent deceleration of JENNIFER's heart rate, in violation of the required standard of medical care.

45. That on August 7, 2013, DORAN unduly delayed delivering JENNIFER by caesarean section after observing the non-reassuring persistent deceleration of JENNIFER's heart rate, in violation of the required standard of medical care.

46. That on August 7, 2013, MOUNT SINAI, by and through its duly authorized agents, apparent agents, servants, employees and physicians, including but not limited to, SHAFFER and DORAN, unduly delayed delivering JENNIFER by caesarean section after observing the non-reassuring persistent deceleration of JENNIFER's heart rate, in violation of the required standard of medical care.

47. That on August 7, 2013, ACCESS, by and through its duly authorized agents, apparent agents, servants, employees and physicians, including but not limited to, DORAN, unduly delayed delivering JENNIFER by caesarean section after observing the non-reassuring

persistent deceleration of JENNIFER's heart rate, in violation of the required standard of medical care.

48. That on August 7, 2013, MOUNT SINAI, by and through its duly authorized agents, apparent agents, servants, employees and physicians, including but not limited to, SHAFFER, improperly used a fetal scalp vacuum to extract JENNIFER from AMADA's womb, in violation of the required standard of medical care.

49. That JENNIFER was born with multiple severe injuries, including but not limited to, global hypotonia, distressed respiration, cephalohematoma, subacute hemorrhage at dependent aspect of bilateral ventricles, enlargement of lateral ventricles.

50. That said injuries were a direct and proximate cause of the Defendants' acts and/or omissions.

51. That upon birth JENNIFER was intubated immediately because she was unable to breathe on her own.

52. That upon birth JENNIFER was immediately transferred to neonatal intensive care unit within MOUNT SINAI's facilities.

53. That on September 17, 2013, AMADA and MARCOS had JENNIFER transferred to Ann and Robert H. Lurie Children's Hospital of Chicago where she resided in its neonatal intensive care unit.

54. That over the ensuing approximately five (5) week period JENNIFER's condition continued to deteriorate.

55. That after heart-rending discussions with JENNIFER's medical team at the Ann and Robert H. Lurie Children's Hospital of Chicago regarding JENNIFER's grim prognosis, AMADA

and MARCOS agreed for the medical team to perform a final palliative extubation of JENNIFER.

56. That JENNIFER died October 19, 2013 as a direct and proximate result of the aforesaid injuries inflicted upon her by the Defendants' acts and/or omissions.

57. AMADA and MARCOS have exhausted their administrative remedies as of July 29, 2016 when the UNITED STATES OF AMERICA denied their administrative tort claims.

58. Pursuant to 735 ILCS 5/2-622(a)(1) attached hereto as Exhibit A is the Affidavit of Plaintiffs' Attorney along with the corresponding Report of Fred J. Duboe, M.D., F.A.C.O.G giving his opinion that there is reasonable and meritorious cause for filing the instant case against the Defendants herein.

## COUNT I:
## WRONGFUL DEATH
## UNITED STATES OF AMERICA

59. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

60. On August 7, 2013, and at all other relevant times herein, UNITED STATES OF AMERICA, by and through SHAFFER, ACCESS, and DORAN, had a duty and responsibility to exercise ordinary care and caution in the diagnosis, care, and treatment with regard to all of its patients, including with the delivery of AMADA and MARCOS' child JENNIFER.

61. Notwithstanding these duties, at the time of the occurrence hereinafter complained of and prior thereto, UNITED STATES OF AMERICA, by and through SHAFFER, ACCESS, and DORAN, negligently breached its duty through one or more of the following acts and/or omissions:

   a. Failed to ensure that JENNIFER was appropriately evaluated, monitored, treated, and delivered by a well-qualified physician;

10

b. Failed to monitor the condition of JENNIFER under circumstances which it knew or should have known required constant monitoring;

c. Failed to intervene to see that proper and adequate medical care and attention was being given to JENNIFER;

d. Failed to properly diagnose and provide proper medical care and treatment to JENNIFER;

e. Failed to ensure proper supervision and/or direction of the delivery of JENNIFER;

f. Failed to ensure the proper identification of the non-reassuring persistent deceleration of JENNIFER's heartbeat;

g. Failed to ensure and/or provide proper and effective assistance in the interpretation of JENNIFER's fetal monitoring strips;

h. Failed to ensure that JENNIFER was timely delivered by caesarean section as to prevent injury to JENNIFER after JENNIFER began to experience a non-reassuring persistent deceleration to her heartbeat;

i. Failed to properly use a fetal scalp vacuum in connection with the delivery of JENNIFER;

j. Failed to ensure that anyone under its direction properly used a fetal scalp vacuum in connection with their delivery of JENNIFER; and

k. Otherwise carelessly failed to consider and prevent injury to JENNIFER during her aforementioned birth.

62. That UNITED STATES OF AMERICA's conduct was negligent as one or more of the foregoing wrongful acts and/or omissions clearly show a conscious disregard for JENNIFER's welfare.

63. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions by UNITED STATES OF AMERICA, JENNIFER suffered severe injuries, including but not limited to, global hypotonia, distressed respiration, cephalohematoma, subacute hemorrhage at dependent aspect of bilateral ventricles, enlargement of lateral ventricles, all of which resulted in her untimely demise.

64. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions by UNITED STATES OF AMERICA, JENNIFER suffered injuries of a personal and pecuniary nature, including but not limited to, past pain and suffering, disability, disfigurement, loss of a normal life, death, and loss of future income, all of which are permanent and for which AMADA and MARCOS are entitled to receive compensation for from UNITED STATES OF AMERICA.

65. UNITED STATES OF AMERICA's negligent conduct caused JENNIFER's death, as death would not have occurred in these circumstances absent some wrongful conduct.

66. As a further direct and proximate result of UNITED STATES OF AMERICA's aforementioned negligent conduct, JENNIFER suffered serious injuries that resulted in her death. As a result, JENNIFER's next of kin have suffered great losses of a personal and pecuniary nature, including but not limited to loss of companionship and society of JENNIFER, as well as grief, sorrow, and mental suffering as a result of JENNIFER's death, subjecting UNITED STATES OF AMERICA to liability pursuant to the Illinois Wrongful Death Act, codified as 740 ILCS 180/1 et seq.

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, UNITED STATES OF

AMERICA, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT II
## SURVIVAL ACT
## UNITED STATES OF AMERICA

67. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

68. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of UNITED STATES OF AMERICA, by and through SHAFFER, ACCESS, and DORAN, JENNIFER was caused to suffer for approximately ten (10) weeks in intensive care until she expired on October 19, 2013.

69. As a further direct and proximate result of UNITED STATES OF AMERICA's aforementioned conduct, JENNIFER suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering, prior to her death, subjecting UNITED STATES OF AMERICA to liability pursuant to the Illinois Survival Act, codified 755 ILCS 5/27-6.

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, UNITED STATES OF AMERICA, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT III:**
**FUNERAL AND BURIAL EXPENSES**
**UNITED STATES OF AMERICA**

70. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

71. As a result of the death of JENNIFER, her parents, AMADA and MARCOS, became liable for medical expenses and funeral and burial expenses.

72. The Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, bring this claim pursuant to the applicable provisions of the "Wrongful Death Act".

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, UNITED STATES OF AMERICA, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT IV:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**UNITED STATES OF AMERICA**

73. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

74. Defendant UNITED STATES OF AMERICA, by and through SHAFFER, ACCESS, and DORAN, exhibited extreme and outrageous conduct when it improperly performed a routine caesarean section delivery by unnecessarily delaying it after observing a non-reassuring persistent deceleration of JENNIFER's heartbeat, and improperly used a fetal scalp vacuum in connection with JENNIFER's delivery, both of which directly and proximately resulted in JENNIFER's untimely demise.

14

75. As a direct and proximate result of UNITED STATES OF AMERICA's extreme and outrageous conduct, AMADA, MARCOS, and other close relatives suffered, and will continue to suffer, severe emotional distress including insuppressible grief and/or sorrow, sleeplessness, outrage, and loss.

76. AMADA and MARCOS bring this claim pursuant to the applicable provisions of the Illinois Survival Act, codified as 755 ILCS 5/27-6.

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, UNITED STATES OF AMERICA, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT V:
## WRONGFUL DEATH
## SINAI HEALTH SYSTEM d/b/a MOUNT SINAI HOSPITAL

77. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

78. On August 7, 2013, and at all other relevant times herein, MOUNT SINAI, and its employees and agents, including but not limited to SHAFFER and DORAN, had to duty and responsibility to exercise ordinary care and caution in the diagnosis, care, and treatment with regard to all of its patients, including with the delivery of AMADA and MARCOS' child JENNIFER.

79. Notwithstanding these duties, at the time of the occurrence hereinafter complained of and prior thereto, MOUNT SINAI, by and through its duly authorized agents, servants, and/or

employees, negligently breached its duty through one or more of the following acts and/or omissions:

a.  Failed to ensure that JENNIFER was appropriately evaluated, monitored, treated, and delivered by a well-qualified physician;

b.  Failed to monitor the condition of JENNIFER under circumstances which it knew or should have known required constant monitoring;

c.  Failed to intervene to see that proper and adequate medical care and attention was being given to JENNIFER;

d.  Failed to properly diagnose and provide proper medical care and treatment to JENNIFER;

e.  Failed to ensure proper supervision and/or direction of the delivery of JENNIFER;

f.  Failed to ensure the proper identification of the non-reassuring persistent deceleration of JENNIFER's heartbeat;

g.  Failed to ensure and/or provide proper and effective assistance in the interpretation of JENNIFER's fetal monitoring strips;

h.  Failed to ensure that JENNIFER was timely delivered by caesarean section as to prevent injury to JENNIFER after JENNIFER began to experience a non-reassuring persistent deceleration to her heartbeat;

i.  Failed to ensure proper training of its employees and agents in the proper use of a fetal scalp vacuum;

j.  Failed to ensure that its employees and agents properly used a fetal scalp vacuum in connection with their delivery of JENNIFER; and

k. Otherwise carelessly failed to consider and prevent injury to JENNIFER during her aforementioned birth.

80. That MOUNT SINAI's conduct was negligent as one or more of the foregoing wrongful acts and/or omissions clearly show a conscious disregard for JENNIFER's welfare.

81. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions by MOUNT SINAI, JENNIFER suffered severe injuries, including but not limited to, global hypotonia, distressed respiration, cephalohematoma, subacute hemorrhage at dependent aspect of bilateral ventricles, enlargement of lateral ventricles, all of which resulted in her untimely demise.

82. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions by MOUNT SINAI, JENNIFER suffered injuries of a personal and pecuniary nature, including but not limited to, past pain and suffering, disability, disfigurement, loss of a normal life, death, and loss of future income, all of which are permanent and for which AMADA and MARCOS are entitled to receive compensation for from MOUNT SINAI.

83. MOUNT SINAI's negligent conduct caused JENNIFER's death, as death would not have occurred in these circumstances absent some wrongful conduct.

84. As a further direct and proximate result of MOUNT SINAI's aforementioned negligent conduct, JENNIFER suffered serious injuries that resulted in her death. As a result, JENNIFER's next of kin have suffered great losses of a personal and pecuniary nature, including but not limited to loss of companionship and society of JENNIFER, as well as grief, sorrow, and mental suffering as a result of JENNIFER's death, subjecting MOUNT SINAI to liability pursuant to the Illinois Wrongful Death Act, codified as 740 ILCS 180/1 et seq.

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, SINAI HEALTH SYSTEM, doing business as MOUNT SINAI HOSPITAL, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT VI**
**SURVIVAL ACT**
**SINAI HEALTH SYSTEM d/b/a MOUNT SINAI HOSPITAL**

85. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

86. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of MOUNT SINAI, JENNIFER was caused to suffer for approximately ten (10) weeks in intensive care until she expired on October 19, 2013.

87. As a further direct and proximate result of MOUNT SINAI's aforementioned conduct, JENNIFER suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering, prior to her death, subjecting MOUNT SINAI to liability pursuant to the Illinois Survival Act, codified 755 ILCS 5/27-6.

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, SINAI HEALTH SYSTEM, doing business as MOUNT SINAI HOSPITAL, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT VII:**
**FUNERAL AND BURIAL EXPENSES**
**SINAI HEALTH SYSTEM d/b/a MOUNT SINAI HOSPITAL**

88. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

89. As a result of the death of JENNIFER, her parents, AMADA and MARCOS, became liable for medical expenses and funeral and burial expenses.

90. The Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, bring this claim pursuant to the applicable provisions of the "Wrongful Death Act".

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, SINAI HEALTH SYSTEM, doing business as MOUNT SINAI HOSPITAL, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT VIII:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**SINAI HEALTH SYSTEM d/b/a MOUNT SINAI HOSPITAL**

91. Plaintiffs repeat and incorporate all of the foregoing paragraphs as if fully set forth herein.

92. Defendant MOUNT SINAI exhibited extreme and outrageous conduct when its agents and employees, including but not limited to SHAFFER and DORAN, improperly performed a routine caesarean section delivery by unnecessarily delaying it after observing a non-reassuring persistent deceleration of JENNIFER's heartbeat, and improperly used a fetal scalp vacuum in connection with JENNIFER's delivery, both of which directly and proximately resulted in JENNIFER's untimely demise.

19

93. As a direct and proximate result of MOUNT SINAI's extreme and outrageous conduct, AMADA, MARCOS, and other close relatives suffered, and will continue to suffer, severe emotional distress including insuppressible grief and/or sorrow, sleeplessness, outrage, and loss.

94. AMADA and MARCOS bring this claim pursuant to the applicable provisions of the Illinois Survival Act, codified as 755 ILCS 5/27-6.

WHEREFORE, Plaintiffs, AMADA ORTEGA and MARCOS ARMAS, both individually and on behalf of JENNIFER ARMAS ORTEGA, deceased, respectfully pray that this Honorable Court enter judgment in their favor, against Defendant, SINAI HEALTH SYSTEM, doing business as MOUNT SINAI HOSPITAL, both jointly and severally with its co-defendant, for $6,000,000 (six-million dollars) in compensatory damages, plus attorneys' fees, costs, and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,
ANTHONY J. PERAICA & ASSOCIATES, LTD.

By: _____
Anthony J. Peraica
Attorney for the Plaintiffs

Anthony J. Peraica
ARDC No. 6186661
ANTHONY J. PERAICA & ASSOCIATES, LTD.
5130 South Archer Avenue
Chicago, IL 60632
(773) 735-1700 – Office
(773) 585-3035 – Facsimile
peraicalaw@aol.com
tony@peraica.com